DAVID CARTER, *et al.*,      )
      )
     Plaintiffs,      )
      )
     v.      )      CAUSE NO. 3:08-CV-209 JVB
      )
TYSON FOODS INC., *et al.*,      )
      )
     Defendants.      )

## REPORT AND RECOMMENDATION

On April 29, 2008, Plaintiffs, David R. Carter, Brant T. Odom, Robert D. Minnick, and Jeremy D. Minnick ("Plaintiffs"), filed their complaint in this Court. Thereafter, on January 13, 2009, the Plaintiffs filed an amended complaint alleging a federal claim under the Fair Labor Standards Act ("FLSA") and several state law claims, including a claim under the Indiana Wage Payment Act, a breach of contract claim, and a *quantum meruit* claim. In each of these claims, the Plaintiffs allege that they were not fully compensated for all the time that they spent working for the Defendants.

On February 2, 2009, Defendants, Tyson Foods Inc. and Tyson Fresh Meats Inc. ("Tyson"), filed a motion to dismiss each of Plaintiffs state law claims, filed as Counts II, III and IV of the Plaintiffs' amended complaint. On February 17, 2009, the Plaintiffs filed a response in opposition. On February 26, 2009, Tyson filed a reply. On July 21, 2009, this Case was referred to the undersigned to resolve the pending motion to dismiss, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72.

## I.     Relevant Background

The following facts are either agreed or are otherwise undisputed.  Further, for the purposes of a motion to dismiss, this Court assumes as true all well-pleaded factual allegations and all reasonable inferences drawn from the Plaintiffs' complaint.  See Jackson v. E.J. Brach Corp., 176 F.3d 971, 977 (7th Cir. 1999).

The Plaintiffs are current and former employees at Tyson's meat packing plant in Logansport, Indiana ("the Plant").  Employees at the Plant process hogs, via an assembly line process, from the live animal through dismemberment, to produce various food products.  Each of the Plaintiffs either worked at one of the various positions along the assembly line or worked in a maintenance capacity at the Plant.

During the relevant time period, the Plaintiffs were represented by the United Food & Commercial Workers International Union ("Union").  On December 21, 2003, Tyson and the Union entered into a collective bargaining agreement ("CBA"), which set forth various terms and conditions of employment for represented employees at the Plant.  Thereafter, on May 19, 2008, following further collective bargaining negotiations, Tyson and the Union adopted an amended version of the CBA.

The CBA includes numerous provisions which govern the employment relationship between Tyson and the Plaintiffs.  For instance, Article 21 of the CBA, entitled "Hours Of Work," details terms and conditions for determining working hours and work schedules of employees at the Plant.  In particular, Article 21 defines  "work time" and indicates how such time is to be calculated.  Similarly, this Article specifies when employees will be paid overtime and determines how overtime is to be calculated.  Relatedly, Article 29 of the CBA, entitled

"Wage Rates," sets forth a detailed matrix for determining the various wage rates for Tyson employees, delineating numerous factors for calculating the applicable rates, such as an employee's division, an employee's job position, and the particular shift worked. The CBA also has several provisions for establishing guaranteed minimum working hours and addressing "call back" pay for employees who are called into work in light of staffing shortages or employee absences. In addition, the CBA includes a separate "Memoranda Of Understanding" which governs time allowed for meal periods. Finally, the CBA establishes a detailed grievance and arbitration procedure which an employee must follow when he or she raises concerns about work conditions or treatment. This grievance procedure requires mandatory and binding arbitration if an employee's grievance is not resolved according to the grievance process.

On January 13, 2009, the Plaintiffs filed an amended complaint alleging a federal claim under the Fair Labor Standards Act ("FLSA") and several state law claims, including a claim under the Indiana Wage Payment Act, a breach of contract claim, and a *quantum meruit* claim. In each of these claims, the Plaintiffs allege that they were not fully compensated for all the time that they spent working at the Plant.

The Plaintiffs primarily allege that they were not compensated for time spent donning and doffing required safety gear. Specifically, the Plaintiffs note that knife-wielding employees at the Plant were required to wear special safety equipment, pursuant to regulations by both Tyson and the government, and had to don and doff the equipment before and after each shift and during lunch breaks. The Plaintiffs argue, however, that they were not compensated for the time spent engaging in these activities. In addition, the Plaintiffs contend that they were not fully compensated for time spent on the assembly line, time spent preparing and maintaining

safety equipment, time spent attending safety meetings, and time spent walking to and from the assembly line.

On February 2, 2009, Tyson filed a motion to dismiss Plaintiffs' state law claims, contending that the claims are preempted by § 301 of the Labor-Management Relations Act ("LMRA"). Tyson argues that Plaintiffs' state law claims are preempted because their resolution will necessarily depend upon application and interpretation of various provisions of the CBA. This Court may enter a Report and Recommendation in this matter based on its referral order and 28 U.S.C. § 636(b)(1)(B).

## II. Analysis

### A. Fed. R. Civ. P. 12(b) Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is appropriate if the complaint sets forth no viable cause of action upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Challenger v. Ironworkers Local No. 1, 619 F.2d 645, 649 (7th Cir. 1980). In assessing the propriety of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court accepts all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them as true. Jackson v. E.J. Brach Corp., 176 F.3d 971, 977 (7th Cir. 1999). A party's claims are subject to dismissal only if it is clear that he can prove no set of facts consistent with the allegations in the complaint that would entitle him to relief. Scott v. City of Chi., 195 F.3d 950, 951 (7th Cir. 1999). The Court is not required to accept a party's legal conclusions. Fries v. Helsper, 146 F.3d 452, 456 (7th Cir. 1998), cert. denied 525 U.S. 930 (1998).

B.    Tyson Foods' Motion to Dismiss

Under the "well-pleaded complaint rule," the plaintiff is "master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." McCarty v. Reynolds Metals Co., 883 F.Supp. 356, 359 (S.D.Ind. 1995).  The rule provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. McCarty, 883 F.Supp. at 359.  However, because the Supremacy Clause of Art. VI of the United States Constitution grants to Congress the power to preempt state law, when Congress acts to completely preempt state law, the doctrine of complete preemption serves as "an independent corollary to the well-pleaded complaint rule."  McCarty, 883 F.Supp. at 359. See also Atchley v. Heritage Cable Vision Assocs, 904 F.Supp. 870, 874 (N.D. Ind. 1995).  Under the doctrine of complete preemption, "if a federal cause of action completely pre-empts a state cause of action[,] any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." McCarty, 883 F.Supp. at 359.

Congress exercised the power of complete preemption through the enactment of § 301(a) of the LMRA.  Atchley, 904 F.Supp. at 874; McCarty, 883 F.Supp. at 359.  Section 301(a) of the LMRA provides that suits for violation of contracts between an employer and a labor organization present a federal question that arises under federal law, thus conferring original jurisdiction upon district courts.  29 U.S.C. § 185(a).  Atchley, 904 F.Supp. at 873.  As such, Section 301 governs disputes regarding collective bargaining agreements and mandates the application of uniform federal law to resolve such disputes.  McCarty, 883 F.Supp. at 359.  Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. McCarty, 883 F.Supp. at 360.  See also Nat'l

Metalcrafters v. McNeil, 784 F.2d 817, 823 (7th Cir. 1986).  As result, Section 301 preempts state law claims that arise from rights created by a CBA or depend upon interpretation of a CBA for resolution.  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985).  Indeed, "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization."  Atchley, 904 F.Supp. at 874; McCarty, 883 F.Supp. at 359-360.

If the resolution of a state law claim depends on the meaning of a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute.  Atchley, 904 F.Supp. at 874.  Section 301 preempts a state law claim when the claim is "founded directly on rights created by collective bargaining agreements" and when the resolution of the state law claim "depends on the meaning of, or requires the interpretation of, a collective bargaining agreement."  Lopez v. Smurfit-Stone Container Corp., 2003 WL 297533, at *2 (N.D. Ill. 2003).  In other words, a claim is preempted if it is "substantially dependent on an analysis of the terms of the collective bargaining agreement."  Id.

The only exception to this preemption doctrine is when a collective bargaining agreement is merely a tangential consideration in the resolution of an otherwise independent state law action or where resort to its provisions is merely *pro forma*.  Atchley, 904 F.Supp. at 874.  Stated differently, if a state law claim can be resolved without interpreting a collective bargaining agreement, the claim is independent and not preempted by § 301.  Id.

Tyson argues that the Plaintiffs' state law claims are preempted because resolution of the claims will require interpretation of numerous CBA provisions.  The Plaintiffs respond that their state law claims are not pre-empted because resolution will require only a mere reference or *pro*

*forma* consultation with the CBA. For the reasons that follow, this Court concludes that Plaintiffs' state law claims are preempted by § 301 of the LMRA and the exception to the preemption doctrine is not applicable.

1.      Preliminary Matters

Tyson asserts that Plaintiffs' state law claims are pre-empted by § 301 of the LMRA because the resolution of Plaintiffs' state law claims will necessarily require interpretation of the collective bargaining agreement ("CBA") made between Tyson and the Union. As such, the Defendants attached a copy of the CBA to their motion to dismiss.

Before addressing the merits of Tyson's arguments for dismissal, the Plaintiffs first contend that this Court should not consider the CBA as part of this Court's resolution of the motion to dismiss. In support, the Plaintiffs note that they did not refer to, nor did they attach, the CBA to their complaint or to their response to Tyson's motion to dismiss. The Plaintiffs do not dispute the existence or authenticity of the CBA. However, the Plaintiffs argue that their state law claims, under the IWPA and under Indiana statutory and common law theories of breach of contract and *quantum meruit*, are not based upon the CBA but are, instead, founded upon "individualized employment relationships arising between [Tyson] and each of the Plaintiffs as individual employees." As such, the Plaintiffs argue that this Court should not consider the CBA as part of the motion to dismiss, contending that their state law claims do not implicate the CBA and that, therefore, this Court will not need to interpret the provisions of the CBA in order to resolve the motion. See Kidd v. Southwest Airlines Co., 891 F.2d 540, 544 (5th Cir. 1990) (holding that a plaintiff who is a member of collective bargaining unit may,

7

nevertheless, assert independent state law claims, "so long as those rights do not derive from provisions of a CBA."). This Court does not agree.

To begin, despite the Plaintiffs' assertion that their state law claims are founded upon independent side contracts, the Plaintiffs did not attach documents to substantiate the existence of such contracts. In addition, the Plaintiffs failed to specify the nature or substance of the purported side-agreements, either as part of their amended complaint or as part of their response to Tyson's motion to dismiss. Instead, the Plaintiffs rely on the bare assertions, made pursuant to their amended complaint, that their claims are founded upon "employment agreements in which, implicitly and/or explicitly, Plaintiffs agreed to perform services for Defendants on an hourly basis," and "employment agreements during which Plaintiffs conferred a measurable benefit upon Defendants by working on Defendants' behalf without compensation."

However, as Tyson aptly notes, a statement of the contract terms or the attachment of the contract are a necessary part of pleading a contract claim. See also McCready v. eBay, Inc., 453 F.3d 882, 891 (7th Cir. 2006) (holding that documents attached to motion to dismiss are considered part of pleadings if referred to in the complaint and are central to claim); Parker v. Hostetler, 2008 WL 346007, at *2 (N.D. Ind. 2008). In addition, this Circuit has recognized that when a complaint refers to and rests on a contract or other document that is not attached to the complaint, a court might be within its rights to consider that document in ruling on a Rule 12(b)(6) motion to dismiss the complaint, so long as the authenticity of the document is unquestioned. Minch v. City of Chicago, 486 F.3d 294, 300 (7th Cir. 2007).

In Minch, the Seventh Circuit concluded that a collective bargaining agreement, not referenced in the plaintiffs' complaint, was nevertheless essential to the court's resolution of a

motion to dismiss because the court determined that the plaintiffs' due process claim rested upon the collective bargaining agreement's provisions. As such, the court concluded that it could properly consider the previously un-referenced document. Specifically, in holding that it could consider an un-referenced CBA to resolve a motion to dismiss, the <u>Minch</u> court stated,

> As it happens, the complaint in this case neither quoted from nor referred to the collective bargaining agreement; no mention of the CBA was made at all. Yet, there is no question that the Plaintiffs' due process claim rests on the terms of the CBA.

<u>Minch v. City of Chicago</u>, 486 F.3d at 300 n.3 (7th Cir. 2007).

In this case, the authenticity of the CBA attached to Tyson's motion to dismiss is unquestioned and unchallenged by the Plaintiffs. Consequently, as in <u>Minch</u>, it is appropriate for this Court to consider the attached CBA, if this Court determines that the Plaintiffs' state law claims are founded in the CBA's provisions. <u>Minch</u>, 486 F.3d at 300 n.3. As explained in more detail below, this Court concludes that resolution of Plaintiffs' state court claims will necessarily require extensive application and interpretation of the CBA's provisions rather than a mere *pro forma* review. As such, this Court concludes that it may properly consider the CBA as part of the motion to dismiss.

2.  <u>Indiana Wage Statute Claim</u>

Federal labor policy provides that when resolution of a state law claim depends on the interpretation of the terms of a collective bargaining agreement, the claim is preempted under § 301 of the LMRA. <u>Nat'l Metacrafters, a Div. of Keystone Consol. Indus. v. McNeil</u>, 784 F.2d 817, 823-24 (1986); <u>Minch v. City of Chi.</u>, 486 F.3d 294, 300 n.8 (7th Cir. 2007); <u>Carletto v. Quantum Foods, Inc.</u>, 2006 WL 2018250, *3 (Ill. App. 2006). Indeed, if it is necessary to interpret either express or implied terms of a collective bargaining agreement, preemption is

applicable.  <u>Atchley v. Heritage Cable Vision Assocs.</u>, 101 F.3d 495, 501 (7th Cir. 1996)

<u>Carletto</u>, 2006 WL 2018250 at *3.

In this case, Plaintiffs have raised a claim under the Indiana Wage Payment Act

("IWPA"), contending that they have not been fully compensated for all the time that they

worked at the Plant.  Defendants argue that resolution of the Plaintiffs' IWPA claim, as plead by

the Plaintiffs, will inevitably require interpretation of numerous provisions of the CBA which

specifically govern work time, wage rates, and overtime calculation.  As such, the Defendants

contend that the Plaintiffs' IWPA claim is preempted by § 301 of the LMRA.  Plaintiffs respond

that, although this Court may have to consult the CBA to resolve the IWPA claim, this Court's

application of the CBA's terms will be merely *pro forma*.  Specifically, the Plaintiffs contend

that because the parties do not contest the validity of the CBA's terms, this Court's construction

of the terms will not require interpretation but will, rather, require only a mere reference to the

CBA and a simple mathematical calculation of the wages owed.

In numerous cases, dealing with facts and claims remarkably similar to those in this case,

courts in this Circuit have routinely held that such state wage law claims are preempted by §

301.  In particular, those courts have overwhelming concluded that, when the resolution of a

state law wage claim requires more than a mere *pro forma* application of collective bargaining

provisions defining hours in a work week, determining applicable wage rates, or delineating the

method for calculating overtime pay, preemption is applicable and the state claim is barred.[1]

---

[1] <u>See</u>, <u>e.g.</u>, <u>Atchley</u>, 101 F.3d at 500-02 (holding that claims for unpaid wages under the Indiana Wage Payment Act were preempted by § 301 because interpretation of a collective bargaining agreement was necessary to determine the regularity and frequency of wage payments); <u>Atchley v. Heritage Cable Vision Assocs</u>, 904 F.Supp. 870, 875 (N.D. Ind. 1995).  <u>See also</u> <u>Freundt v. Allied Tube & Conduit Corp.</u>, 2007 WL 4219417, *5 (N.D. Ill. 2007) (holding that claims under the Illinois Minimum Wage Law were preempted because adjudication would require consulting a collective bargaining agreement to determine the application and computation of wage rates);

In a case remarkably similar to this one, <u>Carletto v. Quantum Foods, Inc.</u>, several plaintiffs, members of a union at a meat processing facility, brought state law claims for unpaid work time, under the Illinois Minimum Wage Law ("IMWL"), the Illinois Wage Payment and Collection Act ("IWPCA"), and under a common law claim of unjust enrichment. <u>Carletto v. Quantum Foods, Inc.</u>, 2006 WL 2018250 (Ill. Ct. App. 2006). The <u>Carletto</u> plaintiffs, like the Plaintiffs in this case, argued that their employer failed to properly pay overtime wages for time that the plaintiffs spent donning and doffing safety gear before and after their shift and during their lunch break. Although the <u>Carletto</u> plaintiffs argued that their state law claims were independent of an existing collective bargaining agreement with their employer, the <u>Carletto</u> court concluded that resolving the plaintiffs' claims would require an underlying determination whether the <u>Carletto</u> plaintiffs "performed the type of work that would entitle them to overtime wages in the first place." As such, the <u>Carletto</u> court proceeded to identify several provisions within the collective bargaining agreement which the court would need to consult to determine whether the <u>Carletto</u> plaintiffs were entitled to overtime pay and to determine what rate the plaintiffs should be compensated. Specifically, the <u>Carletto</u> court held,

<u>Carletto v. Quantum Foods</u>, 2006 WL 2018250, *5-7 (Ill. App. Ct. 2006) (holding that claims under the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act, for time spent donning and doffing safety equipment, were preempted because adjudication would require interpretation of a collective bargaining agreement's definition of "Hours of Work" and application of the CBA's overtime and holiday pay provisions); <u>Gelb v. Air Con Refrigeration & Heating</u>, 826 N.E.2d 391, 399 (Ill. App. Ct. 2005) (holding a state wage law claim preempted by § 301 of the LMRA because adjudication would require the court to interpret terms of a collective bargaining agreement "to determine the pay scale for each plaintiff, . . . and the amount of overtime each plaintiff worked in the relevant time period, and calculate those figures using the formula prescribed by the collective bargaining agreement"); <u>Gonzalez v. Farmington Foods, Inc.</u>, 296 F. Supp 2d 912, 935-36 (N.D. Ill. 2003) (holding that state wage law claims based on donning/doffing and gang time theories were preempted by § 301 because they were "predicated on the rights created by the collective bargaining agreements, and depend on the meaning of, or require an interpretation, of the collective bargaining agreements"); <u>Harrison v. Superior Carpet Installers, Inc.</u>, 2002 WL 243657, *5 (S.D. Ind. 2002) (holding that Indiana Wage Payment Act claim was preempted because resolution of the claim required interpretation of the collective bargaining agreement).

In this case, a finder of fact would first have to determine whether Plaintiffs donning and doffing of safety equipment and work clothes constituted work that would entitle them to overtime wages. Although the CBAs may not have expressly defined "work" for the Plaintiffs, it is a matter of federal contract interpretation to determine whether the words of a collective bargaining agreement created implied rights. Because it is necessary to interpret express or implied terms of the CBAs, state law claims are deemed federal in nature. Further, a fact finder would need to refer to the CBAs to determine the amount of wages that would be due and owed to Plaintiffs. . . . Accordingly, we find [plaintiffs'] state law claims are preempted by federal labor laws, and therefore, dismissal was warranted.

Carletto, 2006 WL 2018250 at *6 (Ill.App. 2006)

Similarly, this Court concludes that resolution of the Plaintiff's Indiana Wage Payment Act claim will necessarily require more than just a *pro forma* consideration of the CBA. Indeed, this Court is persuaded that resolution of this claim will require consultation and interpretation of numerous provisions in the CBA. Even a brief review of the numerous positions of the CBA reveals that the parties in this case attempted to establish, as part of the collective bargaining process, a detailed and elaborate structure for ensuring that Tyson employees would be adequately compensated for all of their work activities. Indeed, Tyson persuasively and astutely points out that the CBA in this case is complete with numerous provisions that define work time and delineate the means for calculating applicable wage and overtime rates.

In response to Tyson's thorough navigation of the CBA, the Plaintiffs cursorily respond that resolution of the IWPA claim will require nothing more than a minor consultation with the CBA's wage rate provisions, a calendar, and a calculator to determine an appropriate damage award. In so doing, the Plaintiffs acknowledge that some interpretation of the CBA will be required for this Court to resolve the IWPA claim; but the Plaintiffs attempt to diminish the extent of this Court's involvement. The Plaintiffs, however, fail to develop their assertion that this Court can resolve the IWPA claim with only a *pro forma* review of the CBA. In fact, the

Plaintiffs provide no alternative to Tyson's detailed explanation regarding how this Court will have to extensively interpret and apply at least two major provisions of the CBA in order to resolve the IWPA claim. Instead, the Plaintiffs rely entirely on the thin argument that, because the CBA's terms are not disputed, applying the CBA's terms to the facts in this case would be purely ministerial. This Court disagrees with the Plaintiffs on this point as well.

To begin, the Plaintiffs' primary argument, underlying all of their claims, is that they were not adequately compensated for all the work activities performed. As such, the starting point for adjudicating the Plaintiffs' IWPA claim, determining whether compensation was required, would require this Court to interpret the CBA's definition of "work time," under Article 21 of the CBA. Article 21, entitled "Hours of Work," establishes the terms for determining working hours at the Plant, specifies when employees should be paid overtime, and delineates how overtime is calculated. In order to adjudicate the Plaintiffs' IWPA claim, this Court would need to first consider and apply the Article to determine whether the Plaintiffs' alleged unpaid activities fall within the parameters of the Article's provision that "[w]ork time will be computed from the time employees on a position commence their work until the time work is stopped at a position, and will be computed to the nearest minute."

Next, assuming that this Court were to determine that the activities qualified as work and were performed as part of the work day, this Court would then need to interpret and apply the overtime provisions of the same Article in order to determine whether the Plaintiffs were entitled to reimbursement as regular work time or as overtime pay. To do so, this Court would have to interpret and apply the provisions of Article 29 of the CBA, entitled "Wage Rates," to determine whether regular wage rates are owed and the applicable wage rate for the unpaid work.

Similarly, if this Court were to interpret the CBA and conclude that overtime pay is required, this Court would need to additionally construe the terms of Article 21 to determine the method for calculating the applicable overtime rate. Finally, this Court's analysis would likely require consultation of several additional Articles in the CBA in order to determine the applicability of the CBA's guaranteed pay and call-in pay provisions and would also likely require consideration of the Memorandum of Understanding's provisions for issues regarding guaranteed meal breaks for maintenance employees.

Consequently, given the CBA's extensive provisions regarding the calculation of compensable time, this Court concludes that adjudication of the Plaintiffs' IWPA claim is inextricably linked with the CBA's provisions and will, therefore, require a robust and involved analysis of the CBA by this Court. As such, this Court can not agree with the Plaintiffs that the IWPA claim can be resolved with only a *pro forma* application of the CBA's terms. Therefore, this Court considers the Plaintiffs' IWPA claim to be preempted by § 301 of the LWMA. Cf. Murray v. Tyson Foods, 2009 WL 322241 (C.D. Ill. 2009).

Alternatively, the Plaintiffs contend that their IWPA claim cannot be preempted by the LMRA because it involves "non-negotiable" statutory rights under state law. However, given the extensive cases which have rejected the Plaintiffs' argument, this Court is not persuaded by the Plaintiffs contentions to the contrary. Specifically, the Supreme Court addressed the issue by noting that even non-negotiable statutory rights may be preempted if interpretation of a collective bargaining agreement was required to resolve the statutory claims. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 n.7 (1988). Similarly, the Seventh Circuit has held that non-negotiable rights created under the Indiana Wage Payment Act, the precise statutory

provision asserted by the Plaintiffs in this case to be immune from the preemptive force of § 301, can be preempted if the IWPA claim cannot be adjudicated without the interpretation of a collective bargaining agreement.  See Atchley v. Heritage Cable Vision Assocs, 101 F.3d 495, 501 (7th Cir. 1996).  As such, because this Court has already determined that interpretation of the collective bargaining agreement is necessary to resolve the Plaintiffs' IWPA claim, this Court concludes that the IWPA claim is pre-empted, regardless of its creation of non-negotiable rights.

Finally, the Plaintiffs proffer a policy argument that this Court should extend the Supreme Court's holding in Barrentine v. Arkansas-Best Freight System, Inc. to bar the pre-emptive force of the LMRA in regards to claims brought under the IWPA. See Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728 (1981).  In Barrentine, the Supreme Court recognized a limitation to the preemptive force of the LMRA, in regards to claims brought under the federal Fair Labor Standard Act.  Id. at 739.  Despite Plaintiffs' assertions that the Barrentine holding should be extended to limit the LMRA's preemptive force over the Plaintiffs' state IWPA claim, however, the Plaintiffs failed to produce a single case which has extended the Barrentine holding in the manner suggested by the Plaintiffs.  Indeed, applying the legal theory asserted by the Plaintiffs would require a contrary analysis to the one applied in Atchley, in which the court concluded that IWPA claims can be preempted by the LMRA, if interpretation of a CBA was implicated in the court's resolution of the IWPA claim.  In addition, in contrast to the Plaintiffs' lack of case law support for their argument, Tyson noted the holding of a District Court in Minnesota which recently rejected a similar argument to extend the application of Barrentine to proscribe the preemptive force of the LMRA over state law claims.  See Zupancich

v. U.S. Steel Corporation, 2009 WL 1474772 (D. Minn. 2009).  As such, without applicable case law to support the Plaintiffs' argument, this Court declines to extend the holding of Barrentine in this case.

Consequently, this Court affirms its conclusion that the Plaintiffs' IWPA claim is preempted by § 301 of the LMRA.

3.      Breach of Contract Claim

Similar to their argument regarding the IWPA claim, the Plaintiffs argue that resolution of their breach of contract claim can be maintained independently of the CBA.  Specifically, the Plaintiffs argue that their breach of contract claim stems from independent side agreements and not the CBA, proscribing this Court's reliance on the CBA's terms to resolve the claim. Further, the Plaintiffs maintain that interpretation of the CBA is not required to resolve the contract claim because the terms of the independent contracts do not conflict with the terms of the CBA.

To begin, this Court notes that the Plaintiffs did not present any evidence to establish the existence of the alleged side agreements or to define the express terms of the agreements, either as part of the complaint or in response to the motion to the dismiss.  Regardless, from the representations in the Plaintiffs' complaint, this Court can decipher that, pursuant to the alleged side agreements, the Plaintiffs "implicitly and/or explicitly, . . . agreed to perform services for the Defendants on an hourly basis."  See Amended Complaint, Doc. No. 49 at 14.  Further, from the complaint, this Court notes the Plaintiffs' contention that they "performed all conditions precedent, if any, required of Plaintiffs pursuant to their employment agreements with Defendants," and that the Defendants "failed to pay for all time worked by Plaintiffs on Defendants' behalf."  Id.

Based on the Plaintiffs' allegations in the Complaint, it is clear to this Court that the alleged side agreements and the express terms of the CBA deal with the same subject matter. That is, both the side agreements and the CBA set forth conditions to ensure that the Plaintiffs are fully compensated for the time worked at the Tyson plant. The case law in this situation is equally clear. When a union employee plaintiff, subject to the terms of a collective bargaining agreement, asserts a violation of contractual rights that are independent of the CBA and those independent contractual rights conflict or potentially conflict with provisions in the CBA, the independent contract claims are preempted by § 301 of the LMRA. See McCarty v. Reynolds Metals Co., 883 F.Supp. 356, 362 (S.D. Ind. 1995). Stated differently, if resolution of a plaintiff's contract claim, based upon an independent side agreement, requires interpretation of a collective bargaining agreement, the contract claim is preempted by § 301. Id.

In McCarty v. Reynolds Metals Co., a union member plaintiff brought a breach of contract claim for unpaid wages based upon an alleged "side agreement," which the plaintiff asserted was independent of the terms of an existing collective bargaining agreement. McCarty v. Reynolds Metals Co., 883 F. Supp. 356, 361-62 (S.D. Ind. 1995). Noting that the collective bargaining agreement addressed the same subject matter as the alleged side agreements, however, the McCarty court held that the plaintiff's contract claim was, nevertheless, preempted by the LMRA. Specifically, the Court stated,

> [b]ecause a side agreement between a union employee and an employer concerning work covered by the CBA is only effective insofar as it accords with the collective bargaining agreement, McCarty's individual contract claim is thus effectively a claim for breach of the CBA. Framed as such, the resolution of McCarty's claim would necessarily involve interpretation of the CBA and examination of the practices and customs of a workplace whose conditions are governed by a CBA. Accordingly, we find that McCarty's suit for breach of the individual contract falls within the preemptive scope of section 301.

17

Id. at 362 (internal citations and quotations omitted).

This Court applies the same analysis here and concludes that the Plaintiffs' contract claim is similarly preempted by the LMRA. This Court has already discussed the numerous provisions in the CBA which govern and define hours worked, wage rates, overtime pay, and which carve out special provisions for determining payment for meal times and guaranteed work hours. Consequently, because of the extent of those CBA provisions, this Court concludes that resolution of the Plaintiffs' contract claim will inevitably require interpretation and reconciliation of competing provisions between the CBA and any existing side agreements. Accordingly, this Court finds that the Plaintiffs' state law contract claim is preempted by § 301 of the LMRA because resolution of the claim is inextricably intertwined with an analysis of the CBA. See McCarty, 883 F. Supp. at 362.

4.      Quantum Meruit Claim

Finally, the Plaintiffs also contend that their common law claim of *quantum meruit* is not preempted by the LMRA, repeating, once again, their argument that no interpretation of the CBA will be needed to resolve the claim. Instead, Plaintiffs argue that all this Court must do is "[a]pply[] the undisputed wage rates and examin[e][] time cards, payroll records and a calendar."

*Quantum meruit* is an equitable doctrine that prevents unjust enrichment by permitting one to recover the value of work performed or material furnished if used by another and if valuable. Fitzpatrick v. Kenneth J. Allen and Assocs., 2009 WL 2900738, *9 (Ind. App. 2009). Tyson characterizes, and the Plaintiffs do not dispute, that the analysis of a *quantum meruit* claim is similar to the analysis of an unjust enrichment claim under Indiana law. See also Truck City of Gary, Inc. v. Schneider Nat'l Leasing, 814 N.E.2d 273, 280 (Ind. App. 2004) (noting

that, under Indiana law, the two claims are one-in-the-same). To establish an unjust enrichment claim under Indiana law, a plaintiff must establish that a measurable benefit has been conferred under such circumstances that the defendant's retention of the benefit without payment would be unjust. McCarty v. Reynolds Metals Co., 883 F.Supp. 356, 361 (S.D.Ind. 1995) (citing Bayh v. Sonnenburg, 573 N.E.2d 398, 408 (Ind.1991)).

To begin, under Indiana substantive law, a claim for *quantum meruit* can not be sustained where there is an express contract between the parties in reference to the same subject matter. Fitzpatrick, 2009 WL 2900738 at *9; City of Indianapolis v. Twin Lakes Enters., Inc., 578 N.E.2d 1073, 1079 (Ind. App. 1991). In the immediate case, the Plaintiffs acknowledge that a valid collective bargaining agreement exists between the parties, which includes numerous provisions that distinguish work time and overtime and govern the calculation of the applicable wage rates and overtime pay. In addition, the Plaintiffs allege that additional side agreements exist between the Plaintiffs and Tyson, which implicate the same provisions. As such, the Plaintiffs, themselves, establish that there are competing contractual agreements in this case, both of which were created to ensure that the Plaintiffs with compensated for work performed on Tyson's behalf. Consequently, this Court could conclude its analysis, as to the sustainability of Plaintiffs' *quantum meruit* claim, on this reason alone.

However, proceeding further, this Court is convinced that Plaintiffs' *quantum meruit* claim is also preempted by the LMRA for the same reasons that Plaintiffs' other state law claims are preempted. McCarty makes clear that, if this Court must interpret or apply the terms of the existing CBA in order to determine whether the Plaintiffs conferred a measurable benefit, for which they had a reasonable expectation of payment, then the Plaintiffs' *quantum meruit* claim is

preempted by § 301 of the LMRA.  McCarty, 883 F.Supp. at 361.  Because this Court has already determined that this Court would need to undergo an extensive application of the CBA's terms in order to resolve the underlying issue regarding whether the Plaintiffs had been fully compensated for the work they performed for Tyson, this Court must, therefore, also conclude that the Plaintiffs' *quantum meruit* claim is preempted by the LMRA for the same reason as the rest of Plaintiffs' state law claims.

5.    Requirement to Exhaust Grievance and Arbitration Remedies

In addition to providing federal jurisdiction over actions involving collective bargaining agreements, § 301 of the LMRA authorizes federal courts to fashion federal common law for enforcement of these agreements.  Atchley v. Heritage Cable Vision Assocs, 904 F.Supp. 870, 874 (N.D. Ind. 1995).  As such, federal labor policy establishes that, where a collective bargaining agreement establishes a grievance and arbitration procedure for disputes arising out of the agreement, the aggrieved employee must exhaust his contractual remedies before seeking judicial relief.  Carletto v. Quantum Foods, Inc., 2006 WL 2018250, *7 (Ill.App. 2006).  Consequently, when the governing collective bargaining agreement includes a grievance and arbitration provision, such as the arbitration provisions in the CBA at issue in the immediate case, grievance and arbitration is the employee's exclusive remedy for a breach of the agreement.  McCarty v. Reynolds Metals Co., 883 F.Supp. 356, 360 n.2 (S.D. Ind. 1995).

In this case, the Plaintiffs do not dispute that the CBA contains a valid and enforceable grievance provision, and the Plaintiffs do not contend that they attempted to exhaust the grievance remedies provided by the CBA.  As such, because the Plaintiffs failed to exhaust the grievance and arbitration remedies set forth in the governing CBA, this Court concludes that

each of the Plaintiffs' preempted state law claims should be dismissed.  See McCarty v. Reynolds Metals Co., 883 F.Supp. 356, 363 (S.D. Ind. 1995).

## III. CONCLUSION

Because this Court has determined that it will be necessary to interpret and consider the terms of the CBA in order to resolve the Plaintiffs' state law claims, this Court concludes that the Plaintiffs' state law claims are preempted by § 301 of the LMRA.  Consequently, this Court **RECOMMENDS** that Tyson motion to dismiss the Plaintiffs' state law claims be **GRANTED**. [Doc. No. 75].  This Court notes, however, that Plaintiffs' federal FLSA claim was not implicated in Tyson's motion and, therefore, is not affected by this Court's order and remains a viable claim in this case.

**NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED.**

**Dated this 13th Day of October, 2009.**

 S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge